Eric Heigis (CA 343828)
12222 Moorpark St., #201
Studio City, CA 91604

Robert Henneke* (TX 24046058)
Chance Weldon* (TX 24076767)
Laura Beth Latimer* (24116619)
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Email:        cweldon@texaspolicy.com

*Attorneys for Plaintiffs*
*Matthew Bernard and Lynn Warner*

**Pro Hac Vice* admission pending

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MATTHEW BERNARD and LYNN WARNER,** | |
| *Plaintiffs,* | Case No. _____ |
| *v.* | |
| **CITY OF OAKLAND, CALIFORNIA,** | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Defendant.* | |

## INTRODUCTION

As California wrestled with adopting a new system of laws in the aftermath of gaining statehood, one of the early concerns of legislature pertained to the ownership of trees: "Trees whose trunks stand wholly upon the land of one owner belong exclusively to him[.]" Cal. Civ. Code § 833 (enacted 1872). This black-letter law has persisted for over a hundred and fifty years, untouched by political fads and passing legal trends. Whatever else may be said about property rights in California, there

remains at least one unchanging, unchallenged axiom: the owner of the land owns the trees on the land.

The City of Oakland appears to have forgotten that axiom. In fact, the City of Oakland turns that presumption directly on its head – instead of being property of the owner of the land, the City implies, trees are the property of the City. Trees cannot be harvested, removed, or disposed of except with the City's permission. And getting the City's permission requires compensation – not to the landowner, but to the City. If a tree is harvested, removed, or disposed of without the City's permission, the fines can be ruinous.

Mr. Matthew Bernard and Ms. Lynn Warner learned firsthand just how severely the City misunderstands Cal. Civil Code § 833 on May 5, 2026, when they were fined nearly $1 million for removing trees from their roughly quarter-acre residential plot in 2021 and 2022. The landowners needed a permit to remove the trees, the City declared, and because Mr. Bernard and Ms. Warner did not have a permit at the time they removed the trees, they would be fined the "value" of the trees.

The City is not entitled to the value of the trees. The City never owned the trees, nor did it own the land on which the trees grew. Moreover, the City had no right to require the permit conditions it sought to impose for the tree removal permits. Finally, even if the City had a right to punish Mr. Bernard and Ms. Warner for removing the trees, the fine imposed is disproportionate and unreasonable.

Mr. Bernard and Ms. Warner now challenge Oakland, Cal., Mun. Code § 12.36 ("Ordinance"), under which they were fined, both on its face and as applied in this case, because the Ordinance constitutes: (1) an unlawful taking in violation of the Fifth and Fourteenth Amendments; (2) an unconstitutional condition on the use of property under the Fifth and Fourteenth Amendments; and (3) an excessive fine under the Eighth Amendment to the United States Constitution.

*Complaint*

## JURISDICTION AND VENUE

1.     Plaintiffs bring this civil-rights lawsuit pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and the Declaratory Judgments Act, 28 U.S.C. § 2201, for violations of rights, privileges, or immunities secured by the Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States.

2.     Plaintiffs seek injunctive and declaratory relief against Defendant City of Oakland because the Ordinance, both facially and as applied to Plaintiffs, violates Plaintiffs' rights under the United States Constitution. Accordingly, this Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 (federal-question jurisdiction) and § 1343 (civil rights jurisdiction).

3.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) and (2). The Defendant is a city in Alameda County, California, which is located in the Northern District of California in the Oakland Division. *See* 28 U.S.C. § 84 (a). The Property is situated, and the actions set forth herein occurred, within the territorial jurisdiction of this Court.

## DIVISIONAL ASSIGNMENT

4.     Under Civil Local Rules 3-2(c) and 3-5(b), Plaintiffs allege that the Divisional Assignment will be the Northern District of California, Oakland Division. The Property is situated, and the actions set forth herein occurred, within Alameda County.

## PARTIES

**A.     PLAINTIFFS**

5.     Plaintiff Matthew Bernard is a resident of Emeryville, California. Mr. Bernard is a mathematics researcher at the Moscow Institute of Physics and Technology and graduate student at University of California, Berkeley.

6.     Plaintiff Lynn Warner is a resident of Emeryville, California. She is a registered nurse at MarinHealth Medical Center.

3

*Complaint*

7.     Mr. Bernard and Ms. Warner own an undeveloped plot of land in Oakland, California.

8.     The plot of land does not currently have a designated street address, but it is identified by the City as parcel number 48H-7672-18 ("Property").

9.     The City has applied the Ordinance to Plaintiffs, issuing a resolution titled:

> RESOLUTION FINDING MATTHEW BERNARD AND LYNN WARNER, OWNERS OF RECORD OF ASSESSOR PARCEL NUMBER 48H-7672-18, IN VIOLATION OF OAKLAND MUNICIPAL CODE CHAPTER 12.36 (PROTECTED TREES) BY ILLEGALLY REMOVING THIRTY-EIGHT PROTECTED TREES AT SAID PARCEL AND IMPOSING A PENALTY, PER CHAPTER 12.36.150 OF THE OAKLAND MUNICIPAL CODE, OF A TOTAL SUM OF NINE HUNDRED AND FIFTEEN THOUSAND, ONE HUNDRED AND THIRTY-FIVE DOLLARS, AND FORTY CENTS ($915,135.40), TO PLACE ON HOLD ANY BUILDING PERMITS, AND PLACE A LIEN FOR SAID PROPERTY UNTIL THIS PENALTY IS PAID IN FULL

(hereinafter "Resolution") (capitalization in original).

10.     The Resolution imposes substantial penalties for removing trees from the Property without a permit.

11.     Unless enjoined by this Court, the Ordinance and Resolution will continue to injure Plaintiffs by unconstitutionally restricting their property rights and limiting their ability to maintain or otherwise productively use the Property.

**B.     DEFENDANT**

12.     The City is the political entity that enacted and enforces Oakland, Cal., Mun. Code § 12.36 ("Ordinance") and enacted the Resolution.

**STATEMENT OF FACTS**

13.     The Ordinance provides: "A protected tree shall not be removed without a permit." Oakland, Cal., Mun. Code § 12.36.030.

14.     The Ordinance defines a protected tree as any tree (excluding eucalyptus and Monterey pines) with a diameter at breast height of 9 inches or more, and any Coast Live Oak with a diameter at breast height of 4 inches or more.

15.     As a condition of permit approval, replacement trees are required.

4
*Complaint*

16. If it is not possible to plant replacement trees, "an in[-]lieu fee as determined by the master fee schedule of the city may be substituted for required replacement plantings[.]" *Id.*

17. The revenues from all in-lieu fees are "applied toward tree planting in city parks, streets and medians." *Id.*

18. There is no requirement in the Ordinance that the revenues be applied to plant trees within the vicinity of the property at issue.

19. Violations of the Ordinance constitute an infraction.

20. Violators of the Ordinance are liable for replacement trees and fees "not to exceed the value of the tree or trees legally removed or damaged." Oakland, Cal., Mun. Code § 12.36.150 (D)-(E).

21. The process by which a landowner is deemed to have violated the Ordinance begins when a Tree Reviewer investigates the alleged violation and makes written preliminary findings.

22. The preliminary findings are then presented to the landowner in writing.

23. Within 10 days, the landowner can request a hearing before the City Council.

24. If the landowner does not request a hearing, the preliminary findings of the Tree Reviewer become final, and the landowner becomes subject to all fines and sanctions determined by the Tree Reviewer.

25. If the landowner does request a hearing before the City Council, the landowner bears the burden of disproving the preliminary findings of the tree reviewer.

26. The Ordinance contains no provisions regarding the type or quantum of evidence necessary for a finding that the landowner has violated the Ordinance.

27. The Ordinance also contains no requirement of a finding that the landowner has injured neighboring properties, the community as a whole, or any other person.

28. The only determination that the City Council can make is whether the landowner violated the Ordinance by removing a tree without a permit.

5

*Complaint*

29. The determination of the City Council is final.

30. Fees are determined by a preset formula.

31. The formula applies regardless of the existence or nonexistence of externalities created by the removal of the trees.

32. If the City Council determines that the landowner has violated the Ordinance, the fees imposed by the City are considered a special assessment and attached as a lien on the property.

33. Additionally, if the City Council determines that the landowner has violated the Ordinance, the Ordinance provides that the landowner "shall not receive a certificate of occupancy from the city for any project wherein such noncompliance and/or violations have occurred until such time as the provisions of this chapter have been fully satisfied." Oakland, Cal., Mun. Code § 12.36.150 (F).

34. The Property in this case is an undeveloped lot in a residential neighborhood in the City, surrounded on three sides by other residential properties and across the street from a densely wooded park.

35. Mr. Bernard and Ms. Warner purchased the property in 2019.

36. In mid-2020, Mr. Bernard and Ms. Warner received a notice from the Oakland Fire Department that the Property was not in compliance with the fire code and ordered them to "remove deadwood" from the Property.

37. Pursuant to the notice from the Fire Department, Mr. Bernard and Ms. Warner began removing dead and dying trees from the property.

38. On October 14, 2020, the Fire Department re-inspected the property and determined that the Property was still in violation of the Fire Code as a result of the dead wood.

39. The Fire Department fined Mr. Bernard and Ms. Warner $450 for noncompliance on their property.

40. To avoid further penalties, Mr. Bernard and Ms. Warner continued clearing the trees.

6

*Complaint*

41. On November 17, 2020, the Fire Department re-inspected the property and deemed that the Property had been brought into compliance.

42. Concerned about further fines from the Fire Department, Mr. Bernard and Ms. Warner hired ISA certified arborist, Ricardo Terrazas Jr., to inspect the property and indicate any further trees that were dead or dying.

43. On June 16, 2021, Mr. Terrazas issued a report indicating that eight trees on the property were fire hazards and needed to be removed.

44. Mr. Terrazas' report stated that the trees were hazardous due to the fact that the trees were leaning at a 45-degree angle.

45. Mr. Terrazas' report further stated that the trees were hazardous due to die back caused by the then-ongoing drought conditions.

46. Mr. Bernard and Ms. Warner retained Julian Tree Care, Inc., to remove the trees on the property.

47. On June 24, 2021, Julian Tree Care, Inc., applied for a permit to remove hazardous trees from the property.

48. The City denied the permit on August 10, 2021, in part because "[t]he City of Oakland's Protected Trees Ordinance does not list fire prevention as a reason for tree removal."

49. Mr. Bernard and Ms. Warner, with the occasional help of contractors and tree removal specialists, removed the rest of the hazardous trees from the Property over the course of the next 10 months.

50. All trees removed by Mr. Bernard, Ms. Warner, or their agents, were on Mr. Bernard and Ms. Warner's property.

51. Mr. Bernard and Ms. Warner collected some of the timber from the trees for use as firewood, both for their own use and also for the use of friends and neighbors.

52. Over the next three years, Mr. Bernard and Ms. Warner had no further communication from the City regarding the trees.

7

*Complaint*

53. On March 7, 2025, Mr. Bernard and Ms. Warner submitted an application to the City to build a single-family residence on their property.

54. The application included plans for planting numerous trees.

55. The application also included plans for erosion and drainage control.

56. Rather than respond to the application for a building permit, the City mailed a Notice of Violation of the Protected Tree Ordinance.

57. Mr. Bernard received the notice of violation via email.

58. Mr. Bernard responded to the email and requested a hearing in front of the City Council.

59. The hearing was initially held on December 16, 2025, before being continued to April 14, 2026, and subsequently continued to May 5, 2026.

60. At the City Council hearing, Mr. Bernard and Ms. Warner had the burden of disproving the preliminary findings contained in the notice of violation.

61. Across the three hearings, Mr. Bernard and Ms. Warner were allowed only fifteen minutes total to disprove the City's allegations.

62. Mr. Bernard and Ms. Warner had no opportunity to formally present evidence or cross-examine the City's witnesses.

63. The City did not present evidence of any externalities created by the tree removal.

64. The City did not present evidence of any impact of the tree removal whatsoever.

65. Instead, the City fixed the amount of the fine based on a preset formula.

66. During the hearing, several City Council members indicated that they intended to penalize Mr. Bernard and Ms. Warner.

67. During the May 5, 2026, hearing, Councilmember Janani Ramachandran stated: "I urge my colleagues to… be crystal clear to anyone who wants to come into our city and trash our city and violate our laws and think that you can get away with it. Today, I think we can send a bold statement that the answer is no. You violate our

8

*Complaint*

laws, you trash our cities, you cut our trees, you are going to be fined. To me, That's fair."

68.   At the close of the hearing, the City Council passed a resolution "charg[ing] Matthew Bernard and Lynn Warner, the legal owners of APN 48H-7672-18, with willful violation of Chapter 12.36 of the Oakland Municipal Code."

69.   The resolution further provided "that City Council impose a penalty of a total sum of nine hundred and fifteen thousand, one hundred and fifty dollars, and ninety-four cents ($915,135.40)."

70.   The resolution further provided "[t]hat the City Council directs the Director of the Oakland Planning and Building Department to place on hold any building permits for APN 48H-7672-18 until this penalty is paid in full."

71.   The Ordinance provides that the fine shall be enforced with a lien against the property in the amount of the fine.

72.   Plaintiffs purchased the Property in 2019 for $175,000.

73.   In 2020, when Plaintiffs began removing trees from the Property, the value of the Property remained $175,000.

74.   The assessed value of the Property in 2025 was $191,385.

## CLAIMS FOR RELIEF

### Count I
### Unconstitutional taking in violation of Fifth and Fourteenth Amendments to the United States Constitution

### *Government Seizure of Control and Use of an Interest in Property*

75.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

76.   Both facially and as applied through the Resolution in this case, the Ordinance effectively grants the City a controlling interest in the "trees," as defined in the Ordinance, on Plaintiffs' Property.

9
*Complaint*

77. So complete is the City's claim of ownership under the Ordinance that it will not grant a permit to remove or engage in certain activities in connection with a tree on the Property unless Plaintiffs agree to compensate the City monetarily or by replacing the tree. *See* Oakland, Cal., Mun. Code § 12.36.060.

78. Moreover, if a tree is removed without a permit, the City requires compensation, up to the full market value of the tree. *See* Oakland, Cal., Mun. Code § 12.36.150(E).

79. By claiming a right to control the use and disposition of the trees on Plaintiffs' Property, the City has made a claim of constructive ownership of the trees.

80. The City has not offered any compensation to Plaintiffs and the Ordinance does not provide any mechanism by which Plaintiffs may be compensated for the City's taking such an interest.

81. The City failed to compensate Plaintiffs for taking a possessory interest in Plaintiffs' trees.

82. Accordingly, the Ordinance, both on its face and as applied in this case, is an uncompensated taking in violation of the Fifth Amendment.

## Count II
### Unconstitutional taking in violation of Fifth and Fourteenth Amendments to the Constitution

*Government Mandated Occupation of Private Property by an Unwanted Object*

83. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

84. The trees removed by Plaintiffs were objects that physically occupied a portion of Plaintiffs' real property.

85. The Ordinance, both on its face and as applied to Plaintiffs through the Resolution, required that Plaintiffs allow those objects to remain on their property unless the City granted a permit to remove them.

10
*Complaint*

86. Thus, the Ordinance authorized a significant physical occupation of Plaintiffs' property.

87. This government-mandated occupation of Plaintiffs' property by the trees is a *per se* taking under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

88. The City did not provide compensation to Plaintiffs for requiring Plaintiffs to maintain trees on the Property.

89. The City claims, and the Ordinance and Resolution mandate, that the City is entitled to compensation from Plaintiffs for Plaintiffs' removal of the trees from the Plaintiffs' Property.

90. In addition, the Ordinance and Resolution set forth civil and criminal sanctions for such removal by Plaintiffs, regardless of whether Plaintiffs' actions actually impact the health, safety, or environment of the City and its residents. *See* Oakland, Cal., Mun. Code § 12.36.150.

91. Accordingly, both facially and as applied, the Ordinance and Resolution constitute an uncompensated taking in violation of the Fifth Amendment, as incorporated against the states by the Fourteenth Amendment.

92. The City's attempt to enforce the Ordinance, by criminal or civil sanctions or through the Resolution, is itself a violation of Plaintiffs' Fifth and Fourteenth Amendment rights.

## Count III

### Unconstitutional taking in violation of Fifth and Fourteenth Amendments to the Constitution

#### *Regulatory Taking*

93. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

94. Plaintiffs invested in this property, which is zoned for residential use, with the expectation of building a home on the property.

11

*Complaint*

95. As a result of the Resolution, passed pursuant to the Ordinance, Plaintiffs are completely prevented from obtaining the necessary permits to build a home on their property.

96. The Ordinance and Resolution are regulations that disrupt the reasonable, investment-backed expectations of Plaintiffs.

97. The Ordinance and Resolution are regulations with an extremely significant economic effect on Plaintiffs.

98. Under the Ordinance and Resolution, the City is demanding $915,135.40.

99. That amount is roughly five times the value of the Property.

100. As a result of the Ordinance and Resolution, Plaintiffs have had their investment-backed expectations significantly undermined.

101. The character of the City's actions is not similar to a nuisance abatement action.

102. In effect, the Ordinance and Resolution require the property owners to maintain objects on the property for public benefit and without compensation.

103. Therefore, the Ordinance and Resolution force Plaintiffs to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

104. The Ordinance is a regulation that goes "too far" and must be recognized as an uncompensated taking pursuant to the Fifth and Fourteenth Amendments.

**Count IV**

**Unconstitutional condition of the use of private property in violation of the Fifth and Fourteenth Amendments the United States Constitution**

105. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

106. In *Dolan v. City of Tigard*, 512 U.S. 374 (1994), the Supreme Court held that conditions attached to a land-use permit must be roughly proportional to the government interest protected.

12

*Complaint*

107. Both on its face and as applied in this case through the Resolution, the Ordinance allows the City to charge thousands of dollars for permission to remove a single tree that is only a few inches across.

108. In this case, under the Resolution, Plaintiffs were required to pay between $750.00 and $94,000.00 per tree.

109. Under the Ordinance and Resolution, this amount is not based on an individualized, quantifiable assessment of negative externalities created by the tree removal.

110. Instead, these amounts are based on a preset formula.

111. Applying that present formula in this case, the City is demanding $915,135.40.

112. Such a condition imposed by the Ordinance and Resolution is not "roughly proportional" to any interest the government has in keeping the trees in place on the Property.

113. There is no evidence that clearing the trees from the Property has negatively affected Plaintiffs' neighbors, or the health, safety, or environment of the City or its residents.

114. In fact, the clearing has benefitted neighbors by reducing fire hazards, falling trees, bugs, and other invasive species.

115. The conditions imposed by the Ordinance and Resolution are therefore not roughly proportional to any public harm caused by Plaintiffs' removal of the trees from the Property and are therefore unconstitutional as applied.

116. Because this gross disproportionality is built into the Ordinance—i.e., the Ordinance requires excessive compensation for the removal of trees, including scrub brush—the Ordinance is also unconstitutional on its face.

117. Additionally, in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), the Supreme Court held that the conditions attached to a land-use permit must share an essential nexus with the legitimate state interest underlying the ordinance.

13

*Complaint*

118. In this case, the conditions required by the ordinance include either replanting small trees anywhere on the property or paying a fine into a fund for the planting of trees throughout the city.

119. There is no nexus between planting small trees at random (or paying into a fund to plant trees at random) and mitigating alleged harms caused by removal on this property.

120. Therefore, the conditions imposed by the Ordinance are unconstitutional exactions and the Ordinance is an "out and out plan of extortion," *Id.* at 837.

### Count V

### Excessive fine in violation of the Eighth and Fourteenth Amendments the United States Constitution

121. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

122. The "touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998).

123. Both facially and as applied in this case, the Ordinance and Resolution mandate penalties of thousands, of dollars for any single tree Plaintiffs removed from their property.

124. Here, despite no evidence of harm to anyone, the City contends that it is entitled to $915,135.40 in penalties from Plaintiffs because Plaintiffs removed trees in order to protect the Property from fire hazards and avoid further fines from the Fire Department.

125. By contrast, the fine assigned for malicious arson of a forest in California is "…not to exceed fifty thousand dollars ($50,000) …" Cal. Penal Code §§ 451.1 and 456.

126. Thus, the penalty assessed by the city for the removal of several dead and dying trees from Plaintiffs' own property is roughly eighteen times higher than the

*Complaint*

highest possible fine for intentionally and maliciously burning down an entire forest in California.

127. The penalties assigned by the City to Plaintiffs for clearing the Property are so out of proportion with the gravity of the offense charged as to be excessive in violation of the Eighth Amendment.

128. Because this gross disproportionality is built into the Ordinance—i.e., the Ordinance provides for thousands of dollars in penalties for the removal a single tree, including scrub brush—the Ordinance is also unconstitutional on its face.

## INJUNCTIVE RELIEF ALLEGATIONS

129. Plaintiffs hereby re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

130. Plaintiffs allege that, both facially and as applied through the Resolution, the Ordinance violates their constitutional rights.

131. If an injunction does not issue enjoining Defendants from enforcing the Ordinance and Resolution, Plaintiffs will be irreparably harmed.

132. Plaintiffs have no plain, speedy, and adequate remedy at law to prevent the Defendant from enforcing the Ordinance and Resolution.

133. If not enjoined by this Court, Defendants will continue to enforce the Ordinance and Resolution in derogation of Plaintiffs' rights.

134. Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

135. Plaintiffs hereby re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

136. An actual and substantial controversy exists between Plaintiffs and Defendant as to their legal rights and duties with respect to whether the Ordinance and Resolution violate the United States Constitution facially and as applied.

15

*Complaint*

137. An actual and substantial controversy exists between Plaintiffs and Defendant as to their legal rights and duties with respect to whether the Ordinance and Resolution violate the United States Constitution as applied to Plaintiffs.

138. This case is presently justiciable because the Ordinance and Resolution apply to Plaintiffs and has been applied against Plaintiffs because the City has enacted the Resolution, requiring Plaintiffs to pay a fine and preventing the issuance of any building permits for the Property.

139. Declaratory relief is therefore appropriate to resolve this controversy.

## **PRAYER & CONCLUSION**

As remedies for the constitutional violations set forth herein, Plaintiffs respectfully request the following relief:

A.  Entry of judgment declaring the Ordinance and Resolution unconstitutional, both facially and as applied to Plaintiffs, in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

B.  An injunction preventing further enforcement of the Ordinance and Resolution against the Plaintiffs for the removal of the aforementioned trees, including but not limited to the recording or enforcement of any liens on the Property or placing a stay on the issuance of any development permits.

C.  An award of attorneys' fees, costs, and expenses in this action pursuant to the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. § 1988; and

D.  Such further legal and equitable relief as the Court may deem just and proper.

Dated: June 29, 2026            Respectfully submitted,

*/s/Eric Heigis*
Eric Heigis (CA 343828)
12222 Moorpark St., #201
Studio City, CA 91604

16
*Complaint*

Robert Henneke* (TX 24046058)
Chance Weldon* (TX 24076767)
Laura Beth Latimer* (TX 24116619)
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, TX 78701
Telephone:    (512) 472-2700
Email:           cweldon@texaspolicy.com

*Attorneys for Plaintiffs*
*Matthew Bernard and Lynn Warner*

*Pro Hac Vice* admission pending

17
*Complaint*